USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 8/13/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                                                               :
JOHN WILEY & SONS, INC.,                                       :   **ORDER**
                                                               :
                                    Plaintiff,                 :   09 Civ. 4307 (AKH)
                                                               :
            -against-                                          :
                                                               :
DAVID HISER,                                                   :
                                                               :
                                    Defendant.                 :
-------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

        John Wiley & Sons, Inc. ("Wiley"), a textbook publisher, brought this action to stay an arbitration commenced by David Hiser, a photographer, in which Hiser alleged that Wiley infringed his copyright in a photograph of Moorea, an island in French Polynesia, by using it without permission in several editions of a textbook Wiley published. Hiser counterclaimed, asserting the underlying copyright infringement allegations. Hiser also brought claims against R.R. Donnelley & Sons, the alleged printer of the textbooks at issue.

        On July 7, 2010, the parties began settlement negotiations, exchanging a series of emails. Hiser now argues that the parties reached a binding and enforceable agreement.

**I. Background**

        On July 6, 2010, Maurice Harmon, Hiser's counsel, contacted Wiley's attorneys indicating that Hiser would be willing to consider a settlement below the range previously discussed. The parties agreed that Wiley, if it wished, would make a settlement proposal the following morning.

Ashima Aggarwal, counsel for Wiley, emailed Mr. Seidman at 10:56 a.m. the following morning, offering to settle "Mr. Hiser's claims for $13,040." After explaining the basis of the offer, Ms. Aggarwal wrote:

> Last, we've expressed our concern to you before that Wiley will become a target for your clients and that there are other litigations to come. Let me confirm to you that we've investigated the matter and the use of Mr. Hiser's photograph without permission was the result of an administrative error. It was not deliberate. Can we craft some sort of agreement to avoid future litigations over photo permissions issues with you as part of this settlement?

Ex. attached to Joint Letter dated August 6, 2010. Mr. Seidman responded about a half hour later, rejecting the offer and stating that it could not enter into a non-litigation agreement between his law firm and Wiley, because such an agreement would violate the applicable ethics rules. Id. Mr. Seidman also stated that Wiley's monetary offer was too low and counter-offered for $19,266.02. Id.

Ms. Aggarwal responded later in the day, stating that the maximum Wiley would offer was $15,000 and,

> [w]ith respect to the covenant not to sue, one of my colleagues did an agreement where his client, which would be Wiley in this case, put the firm in question on a small annual retainer and effectively became a client of the firm. What are your thoughts on such an arrangement?

Id. Mr. Seidman responded, writing,

> Mr. Hiser accepts your counteroffer of $15,000 for John Wiley's unlicensed use of his French Moorea photograph in the books in suit. Our firm is unwilling to enter into any arrangement with Wiley that would be part of this agreement. We believe that it is unethical no matter how it is structured.

Id. In response to Mr. Seidman's email, Ms. Aggarwal wrote, "the agreement that there would be no more litigations is an important aspect of the settlement for us. Can we have a discussion around this issue?" Id.

2

Counsel for Hiser responded that the parties had reached a binding settlement agreement notwithstanding disagreement on the non-litigation covenant. He stated that he would seek damages for breach of the agreement if Wiley refused to abide by it and continued to litigate. Subsequently, the parties exchanged a series of emails disputing whether the email exchange constituted a binding settlement agreement.

They presented the issue to the court in a joint letter pursuant to my Individual Rule 2(E).

Hiser contends that the parties' agreement on the monetary term demonstrates a meeting of the minds. He argues that the non-litigation covenant was a separate proposal on which Wiley did not condition the settlement, and, in any case, that the covenant would violate applicable ethics rules and thus could not have been a material term.

## II. Discussion

The non-litigation covenant does appear to violate applicable ethics rules. The ABA Model Rules of Professional Conduct and the New York Rules of Professional Conduct provide that "[a] lawyer shall not participate in offering or making . . . an agreement in which a restriction on a lawyer's right to practice is part of the settlement of a client controversy." ABA Model Rule 5.6(b); N.Y. Rule 5.6(a)(2). This restriction prohibits Wiley from offering, and Hiser from accepting, a settlement that would restrict the ability of Hiser's counsel to sue Wiley on behalf of other clients. Wiley's argument to the contrary is somewhat disingenuous in light of its proposal to structure the arrangement so as to avoid the ethical prohibition. See Ex. attached to Joint Letter dated August 6, 2010 ("With respect to the covenant not to sue, one of my colleagues did an

agreement where his client, which would be Wiley in this case, put the firm in question on a small annual retainer and effectively became a client of the firm.").

Nevertheless, Wiley viewed the covenant as an essential part of its settlement offer. Its initial email explicitly proposed "an agreement to avoid future litigations over photo permissions issues . . . *as part of this settlement*." Id. (emphasis added). Hiser accepted only the monetary term. An acceptance that differs from the terms of an offer operates as an absolute rejection and a counter offer. Deval Denizcilik Ve Ticaret A.S. v. Italiana, 09 Civ. 367 (DC), 2009 WL 5179015, at *2 (S.D.N.Y. Dec. 23, 2009).

Hiser argues that the court should overlook the parties' disagreement on the non-litigation covenant when determining whether they formed a binding settlement agreement because the covenant would have violated applicable ethics rules. He does not, however, cite any authority for this proposition.

Accordingly, I hold that the parties did not form a binding settlement agreement.

SO ORDERED.

Dated: August 13, 2010
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

4